IN THE DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVAUGHN M. TATE-JOHNSON | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | NO. |
| v. | ) | |
| | ) | |
| POLICE OFFICER JOSH ALLISON, | ) | |
| | ) | |
| *Defendant.* | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Davaughn M. Tate-Johnson, by his attorneys at the Mizner Law Firm, files this Complaint and states:

### A. Parties

1. Mr. Tate-Johnson is an African American adult individual, residing at 333 East 26th Street, Erie, Pennsylvania 16504.

2. Defendant Josh Allison is employed by the City of Erie as a municipal police officer, with headquarters at 626 State St, Erie, Pennsylvania 16501. At all times, Defendant Allison was acting in his capacity as a City of Erie police officer. Defendant Allison is being sued in his personal capacity.

### B. Jurisdiction and Venue

3. This Complaint includes claims made pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983.

4. This Honorable Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

1

5. This Complaint also includes pendent state law claims, over which this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendant is subject to personal jurisdiction within this District.

### C. Facts

7. On January 4, 2019, Mr. Tate-Johnson was operating a 2008 Chevrolet Suburban westbound on East 26th Street at or around 2:50 am in the 900 block of East 26th Street when he saw a police car behind him with its emergency lights activated.

8. Mr. Tate-Johnson promptly pulled his vehicle over, and then remained in his vehicle as he was approached by five City of Erie police officers - Lieutenant Tony Talarico, Sergeant Tom Lenox, Patrolman Anthony Fatica, Patrolman Daniel Post, and Defendant Patrolman Josh Allison.

9. An eyewitness on the opposite side of the street videotaped the ensuing encounter on his cell phone.

10. When the police officers approached Mr. Tate-Johnson, he was concerned about the number of police officers and their aggressive tone.

11. One or more of the police officers yelled at Mr. Tate-Johnson to get out of the vehicle, and Mr. Tate-Johnson asked, "why"?

12. Concerned and fearful for his safety and well being, Mr. Tate-Johnson did not exit the vehicle.

13. Instead, he placed his hands on the steering wheel as he had been taught to do when approached by the police, under the belief that if he remained in his vehicle, it would be harder for the police to assault and injure him.

14. As Mr. Tate-Johnson sat with both of his hands in plain view on the steering wheel, his driver's side door was opened and two officers grabbed him on his left side, while one officer opened the passenger side order, entered the vehicle and shoved on Mr. Tate-Johnson's right side.

15. Although frightened and concerned, Mr. Tate-Johnson tried to remain as calm as possible and asked why he was being forced out of the vehicle.

16. As Mr. Tate-Johnson was pulled out of the front driver's seat, one officer had control of his right arm while another officer had control of his left arm behind his back.

17. As a result, he was pulled out of the driver's seat in a standing position on the road, just beside the vehicle.

18. Once outside the vehicle, defendant officer Allison put his left hand around the left side and back of Mr. Tate-Johnson's neck and put his right hand behind the right side and back of Mr. Tate-Johnson's neck while two other officers held Mr. Tate-Johnson's arms behind his back.

19. Defendant Officer Allison, with a hand on each side of his neck and head, attempted to a jump kick into Mr. Tate-Johnson's stomach, but missed.

20. Immediately thereafter, Defendant Officer Allison punched Mr. Tate-Johnson three times in his stomach in quick succession, while Mr. Tate-Johnson stood restrained by the other two officers unable to move or shield his body from the blows. Mr. Tate-Johnson was

defenseless.

21. Between the second and third punch, an unknown officer ordered Mr. Tate-Johnson to get "on the ground," and the officers proceeded to force Mr. Tate-Johnson down onto the pavement. This was the first time Mr. Tate-Johnson was ordered to get "on the ground;" moreover, it was impossible for Mr. Tate-Johnson to do anything to comply with this order because both his arms were being restrained by two officers.

22. In addition, Mr. Tate-Johnson was not given any time to comply with the order to get "on the ground" before Defendant Allison punched Mr. Tate-Johnson for a third time.

23. Once Mr. Tate-Johnson was lying in the road on his stomach, his hands were cuffed behind his back while at least one officer knelt on his back.

24. Mr. Tate-Johnson was kept lying on the pavement for several minutes with the officers kneeling overtop of him.

25. At one point, an officer placed his knee directly against Mr. Tate-Johnson's neck, forcing his head and face down into the pavement and underneath the vehicle.

26. This was done after Mr. Tate-Johnson was already completely subdued by the officers who knelt around him.

27. Mr. Tate-Johnson did not pose a physical threat to anyone and did not have a weapon of any nature.

28. After the incident, a criminal complaint was filed against Mr. Tate-Johnson.

29. In an attempt to pre-empt and discredit any claim that the officers had acted with excessive force or otherwise violated Mr. Tate-Johnson's civil rights, the criminal complaint included several untruthful claims about Mr. Tate-Johnson. These untruthful claims included:

    a. That Mr. Tate-Johnson "did kick officers and refused to provide us with his hands";

    b. That Mr. Tate-Johnson "did continue to not allow officers to search by kicking his legs and turning away from us"; and

    c. That Mr. Tate-Johnson "did crawl under the vehicle in order to [sic] resist complying with officers."

30. None of these claims are truthful; in fact, the third-party video of the incident demonstrates their falsity.

## COUNT I
## VIOLATION OF THE FOURTH AMENDMENT

*Davaughn Tate-Johnson*
*v.*
*Police Officer Josh Allison*

31. The foregoing averments are incorporated herein by reference as if fully set forth herein.

32. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. Amend. IV.

33. A seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, (1989); *Ashton v. City of Uniontown*, 459 Fed. App'x 185, 189 (3d Cir. 2012) (stating that a "seizure occurs whenever a government actor terminates an individual's ability to move freely.").

34. Whether the force used to effect a seizure was reasonable under the Fourth

Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

35. "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

36. Finally, "[t]he absence of physical injury or contact does not necessarily mean that excessive force was not used." *Periera v. Lizzio*, 2012 U.S. Dist. LEXIS 51202, at * 2 (M.D. Pa. Apr. 11, 2012).

37. Defendant Police Officer Allison acted without proper cause or legal justification when he attempted to kick Mr. Tate-Johnson and punched Mr. Tate-Johnson three times in his stomach in quick succession.

38. Defendant Police Officer Allison's conduct was wanton, reckless, dangerous and violated standards for police conduct.

39. As a result of the Defendant Police Officer's Allison conduct, which violated the Fourth Amendment, Mr. Tate-Johnson has suffered:

    a. Post traumatic stress disorder;

    b. Neck and back pain;

    c. Left hand numbness;

    d.  Lower extremity radiculopathy;

    e.  Pain and suffering;

    f.  Inconvenience;

    g.  Mental anguish and upset;

    h.  Recurring nightmares;

    i.  Humiliation and embarrassment; and

    j.  Loss of life's pleasures.

WHEREFORE, Plaintiff Davaughn M. Tate-Johnson respectfully requests that judgment be entered in his favor and against Defendant Police Officer Josh Allison in an amount in excess of $75,000.00, along with all other relief allowed by law.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*Davaughn M. Tate-Johnson*
*v.*
*Police Officer Josh Allison*

40.    The foregoing averments are incorporated herein by reference as if fully set forth herein.

41.    As defined by Section 46(1) of the Restatement (Second) of Torts, a plaintiff may pursue a claim for intentional infliction of emotional distress: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

7

42. Defendant Police Officer Allison's conduct in attempting to kick Mr. Tate-Johnson, punching him three times in his stomach in quick succession, was wanton, reckless, and dangerous.

43. As a result of the Defendants' conduct, Mr. Tate-Johnson has suffered:

   a. Post traumatic stress disorder;

   b. Neck and back pain;

   c. Left hand numbness;

   d. Lower extremity radiculopathy;

   e. Pain and suffering;

   f. Inconvenience;

   g. Mental anguish and upset;

   h. Recurring nightmares;

   i. Humiliation and embarrassment; and

   j. Loss of life's pleasures.

WHEREFORE, Plaintiff Davaughn M. Tate-Johnson respectfully requests that judgment be entered in his favor and against Defendant Police Officer Josh Allison in an amount in excess of $75,000.00, along with all other relief allowed by law.

### COUNT III - ASSAULT

*Davaughn M. Tate-Johnson*
*v.*
*Police Officer Josh Allison*

44. The foregoing averments are incorporated herein by reference as if fully set forth herein.

45. In Pennsylvania, an actor is subject to liability to another for assault if (a) he acts *intending* to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in immediate apprehension. *Renk v. City of Pittsburgh*, 641 A.2d 289, 294-95 (1994) (emphasis in original).

46. As the Supreme Court has explained, "[t]he reasonableness of the force used… determines whether the police officer's conduct constitutes an assault and battery." *Id*.

47. Defendant Police Officer Allison intentionally attempted to kick Mr. Tate-Johnson, and then intentionally punched him three times in his stomach in quick succession.

48. These intentional acts were objectively excessive and wanton, given the circumstances.

49. As a result of the Defendants' assault, Mr. Tate-Johnson has suffered:

   a. Post traumatic stress disorder;

   b. Neck and back pain;

   c. Left hand numbness;

   d. Lower extremity radiculopathy;

   e. Pain and suffering;

   f. Inconvenience;

   g. Mental anguish and upset;

   h. Recurring nightmares;

   i. Humiliation and embarrassment; and

   j. Loss of life's pleasures.

WHEREFORE, Plaintiff Davaughn M. Tate-Johnson respectfully requests that judgment be entered in his favor and against Defendant Police Officer Josh Allison in an amount in excess of $75,000.00, along with all other relief allowed by law.

### COUNT IV - BATTERY

*Davaughn M. Tate-Johnson*
*v.*
*Police Officer Josh Allison*

50. The foregoing averments are incorporated herein by reference as if fully set forth herein.

51. As defined by Section 18 of the Restatement (Second) of Torts:

> (1) An actor is subject to liability to another for battery if
>
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
> (b) an offensive contact with the person of the other directly or indirectly results.
>
> (2) An act which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for a mere offensive contact with the other person although the act involves an unreasonable risk of inflicting it and, therefore, would be negligent or reckless if the risk threatened bodily harm.

52. The elements of the tort of battery are 'a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent.' Prosser & Keeton, *Law of Torts*, at 39 (5th ed. 1984)." *Levenson v. Souser*, 384 Pa.Super. 132, 146, 557 A.2d 1081, 1088 (1989).

53. Defendant Police Officer Allison intentionally attempted to kick Mr.

Tate-Johnson, and intentionally punched him three times in his stomach in rapid succession.

54.     These intentional acts were intended to, and in fact did, cause harmful and offensive contact with Mr. Tate-Johnson.

55.     Defendant officer committed a battery on Mr. Tate-Johnson, and as a result, Mr. Tate-Johnson has suffered:

    a. Post traumatic stress disorder;

    b. Neck and back pain;

    c. Left hand numbness;

    d. Lower extremity radiculopathy;

    e. Pain and suffering;

    f. Inconvenience;

    g. Mental anguish and upset;

    h. Recurring nightmares;

    i. Humiliation and embarrassment; and

    j. Loss of life's pleasures.

WHEREFORE, Plaintiff Davaughn M. Tate-Johnson respectfully requests that judgment be entered in his favor and against Defendant Police Officer Josh Allison in an amount in excess of $75,000.00, including punitive damages along with all other relief allowed by law.

    Respectfully submitted,

    MIZNER LAW FIRM

    By: /s/ John F. Mizner

    PA Supreme Court ID 53323

John F. Mizner
jfm@miznerfirm.com

PA Supreme Court ID 322823
Joseph Caulfield
jpc@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
(814) 454-3889

*Attorney for the Plaintiff*